## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KEYNON MICHAEL OWENS,    )
                                   )
           Petitioner,     )
                                   )
v.                          )     **Case No. 12-CV-0117-CVE-FHM**
                                   )
MIKE ADDISON, Warden,     )
                                   )
          Respondent.    )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Keynon Michael Owens, a state inmate appearing pro se. Respondent filed a response (Dkt. # 11) and provided the state court records (Dkt. ## 11 and 12) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 13). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### BACKGROUND

On May 19, 2006, two Hispanic men, cousins Javier and Jesus Carranza, went to Show Place, a "gentlemen's club," located in Tulsa, Oklahoma. While at the club, the two men arranged to meet one of the dancers, Brandi Lindsey, a/k/a Dallas, after the club closed for the purpose of having sex. Lindsey called her boyfriend, Joe Gene Sanders, and told him about the two men. Sanders told Lindsey they should rob the men. After the club closed at 2:00 a.m. on May 20, 2006, Javier and Jesus followed Lindsey and her friend and fellow club employee, Triston Fleetwood, to the apartment complex where Lindsey lived with Sanders. Lindsey was driving Fleetwood's car. The men got out of their vehicle and followed Lindsey and Fleetwood into the complex. As they began to round a corner, two black men, later identified as Sanders and Keynon Owens, Petitioner

herein, appeared.  Sanders said "give me your money." Javier and Jesus began to run.  Sanders, armed with a handgun, shot both men in the back.  Jesus went down and remained still.  Owens went through Jesus's pockets and took his wallet and keys.  Javier continued to resist. Sanders stood over Javier, and while shooting him at point blank range, said "I told you not to run." Sanders then took Javier's wallet and keys from his pockets.  Lindsey, Fleetwood, Sanders, and Owens all ran from the scene and went to Lindsey and Sanders' apartment.  Jesus survived.  Javier died at the scene.

The next day, Lindsey and Fleetwood, along with Sanders' sister, Tan, went to Sanders' home town, Redbird, Oklahoma. After dropping Tan off at the Sanders' family home, Lindsey and Fleetwood disposed of the wallets, Sanders' clothes, and the handgun, as directed by Sanders. They returned to Tulsa. Lindsey called 911 because she and Fleetwood knew the police had impounded Fleetwood's car after the shooting.  Police detectives arrived and took Lindsey and Fleetwood to the Detective Division where they were interviewed separately. Although the two women had agreed to lie and tell the police that two unknown black men appeared from nowhere and robbed Jesus and Javier, they eventually told police what happened and identified Sanders and Owens as the robbers.

Based on those events, Petitioner Keynon Owens, and his co-defendants, Joe Gene Sanders and Brandi Nicole Lindsey, were charged with multiple felonies in Tulsa County District Court,

Case No. CF-2006-2341.[1] Petitioner was charged with First Degree Felony Murder (Count II),

Shooting With Intent to Kill (Count III), Robbery With a Dangerous Weapon (Count IV), and

Robbery With a Dangerous Weapon (Count V).  Javier Carranza was the victim in Counts II and IV.

Jesus Carranza was the victim in Counts III and V. Petitioner and Sanders were tried jointly. At the

conclusion of the trial, Petitioner was found guilty of Counts II and V, but was acquitted of Counts

III and IV.  In accordance with the jury's recommendations, the trial judge sentenced Petitioner to

life imprisonment on Count II and to ten (10) years imprisonment on Count V, to be served

consecutively.  At trial, Petitioner was represented by attorney Larry Edwards.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal

Appeals (OCCA).  On direct appeal, Petitioner was represented by attorney Bill Zuhdi. On May 12,

2009, in Case No. F-2007-1151, the OCCA affirmed the judgment and sentence as to the conviction

for Robbery With a Dangerous Weapon, but reversed and remanded for a new trial Petitioner's

Count II conviction for First Degree Felony Murder.  See Dkt. # 16.  The OCCA determined that

plain error occurred when the jury returned inconsistent verdicts, i.e., guilty of felony murder (Count

II) and not guilty of Robbery With a Dangerous Weapon (Javier) (Count IV), the felony underlying

---

[1]Co-defendant Sanders was charged with First Degree Malice Murder, or in the alternative, First Degree Felony Murder (Count I), Shooting With Intent to Kill (Count III), Robbery With a Dangerous Weapon (Counts IV and V). At the conclusion of his joint trial with Petitioner, the jury found Sanders guilty of murder under both theories, and sentenced him to life without parole on Count I.  In addition, the jury found Sanders guilty of Counts III, IV, and V and sentenced him to ten (10) years imprisonment on Count III, and to twenty (20) years imprisonment on Counts IV and V.  The trial judge sentenced Sanders in accordance with the jury's recommendation, and ordered that Counts I and IV were to be served concurrently, and that Counts III and V were to be served consecutively to each other and to Counts I and IV.  Co-defendant Lindsey was charged along with Petitioner in Count II, and with Petitioner and Sanders in Counts IV and V.  Prior to trial, Lindsey pled guilty to Accessory After the Fact to First Degree Murder and was sentenced to ten (10) years imprisonment, with two (2) years suspended. She testified for the State at the joint trial of Petitioner and Sanders.

the felony murder charge.  Id.  The OCCA further determined that the inconsistent verdicts resulted from improper jury instructions coupled with the trial judge's failure to comply with Okla. Stat. tit. 22, § 894 (requiring trial judge to bring jury back into court to address a question on a point of law), upon his receipt of notes from the jury clearly reflecting confusion regarding the relationship between Counts II and IV.  See Dkt. # 16.

Petitioner returned to Tulsa County District Court to be retried as to Count II, First Degree Felony Murder. He was again represented by attorney Larry Edwards. Prior to his second trial, Petitioner filed a motion to dismiss, arguing that the legal principles of double jeopardy and collateral estoppel precluded a second trial on a charge of felony murder for the death of Javier Carranza because he had been acquitted of the underlying felony supporting the felony murder charge. The motion to dismiss was denied and Petitioner proceeded to be retried by a jury. Counsel for Petitioner continued to object throughout the trial that the retrial was barred by double jeopardy and collateral estoppel. His objections were overruled. At the conclusion of his second jury trial, Petitioner was again found guilty and the jury recommended a sentence of life imprisonment.  On December 7, 2009, the trial judge sentenced Petitioner to life imprisonment.

Petitioner appealed. Represented by attorney Kristi Christopher, he raised eight (8) propositions of error, as follows:

Proposition 1: Because Mr. Owens was acquitted of the underlying felony supporting his felony murder charge, his conviction and sentence for felony murder violate the double jeopardy provisions of the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 21 of the Oklahoma Constitution and must be reversed and remanded with instructions to dismiss.
    A.      Standard of review.
    B.      Facts pertinent to claim.
    C.      Traditional double jeopardy.
    D.      Collateral estoppel.
    E.      Conclusion.

Proposition 2:   The admission of testimony and evidence regarding the charges Mr. Owens's first jury found him not guilty of was a violation of the collateral estoppel component of the double jeopardy provisions of the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 21 of the Oklahoma Constitution.

Proposition 3:   The prejudicial introduction of evidence at trial not provided to the defense during discovery deprived Mr. Owens of a fair trial in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

Proposition 4:   The trial court committed reversible error by failing to instruct the jury that the testimony of an informer should be examined and weighed with greater care than that of an ordinary witness. By failing to give this instruction regarding the testimony of Brandi Lindsey and Triston Fleetwood, the court violated Mr. Owens's rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition 5:   Mr. Owens was denied his right to a fair trial because the trial court did not instruct the jury that Triston Fleetwood was an accomplice as a matter of law and did not issue the proper corroboration instruction.

Proposition 6:   Mr. Owens received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.
      A.      Failure to request required instructions.
      B.      Failure to adequately investigate and present additional evidence of innocence.
            1.      Elizabeth Millican
            2.      DNA evidence
      C.      Conclusion.

Proposition 7:   Under the circumstances of this case, Mr. Owens's sentence was excessive in violation of the Eighth and Fourteenth Amendments and the corollary provisions of the Oklahoma Constitution found in Article 2, Sections Seven and Nine.

Proposition 8:   The accumulation of error in this case deprived Mr. Owens of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

(Dkt. # 11, Ex. 1).  In an unpublished summary opinion, filed March 25, 2011, in Case No. F-2009-1143 (Dkt. # 11, Ex. 3), the OCCA affirmed the Judgment and Sentence of the district court.

Petitioner commenced the instant habeas corpus action by filing his petition on March 6, 2012.  See Dkt. # 1.  In his petition, he identifies the following grounds of error:

Ground 1:    Because Mr. Owens was acquitted of the underlying felony supporting his felony murder charge, his conviction and sentence for felony murder violate the double jeopardy provisions of the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 21 of the Oklahoma Constitution.

Ground 2:    The admission of testimony and evidence regarding the charges Mr. Owens's first jury found him not guilty of was a violation of the collateral estoppel component of the double jeopardy provisions of the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 21 of the Oklahoma Constitution.

Ground 3:    Mr. Owens was wrongly sentenced and incarcerated by the trial court in violation of the Eighth Amendment of the United States Constitution.

Ground 4:    Mr. Owens received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

(Dkt. # 1).  In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) as to grounds 1, 2, and 4, and that the claim asserted in ground 3 is moot.  Id.

## ANALYSIS

### A.  Exhaustion/Evidentiary hearing

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on direct appeal after his two trials.  Therefore, he has exhausted state court remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, his claims shall be reviewed pursuant to § 2254(d).  Insofar as Petitioner claims a violation of the Oklahoma Constitution, those claims are denied because they are not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions).  Instead, when conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

In this case, the OCCA affirmed the judgment of the trial court, thereby denying relief on grounds 1, 2, and 4 as part of the direct appeal in Case No. F-2009-1143. See Dkt. # 11, Ex. 3. In addition, the OCCA adjudicated ground 3 as part of Petitioner's first direct appeal in Case No. F-2007-1151. See Dkt. # 11, Ex. 16. Therefore, Petitioner's claims will be reviewed pursuant to § 2254(d).

## 1.    Double jeopardy (ground 1)

As his first proposition of error, Petitioner alleges that his retrial on the charge of felony murder after he had been found not guilty of the underlying felony, robbery of Javier Carranza, violates the prohibition against double jeopardy. See Dkt. # 1. On direct appeal, Petitioner cited both "traditional double jeopardy" and collateral estoppel principles and argued that his felony murder conviction had to be reversed and remanded with instructions to dismiss. See Dkt. # 11, Ex. 1 at 11-24. The OCCA addressed the merits of this claim and found that Petitioner's retrial and conviction were not barred by double jeopardy or collateral estoppel. See Dkt. # 11, Ex. 3 at 2. As to Petitioner's double jeopardy argument, the OCCA found as follows:

> [T]his prosecution was the result of a reversal on appeal and remand for a new trial. Under these circumstances the doctrine of "continuing jeopardy" applies. Criminal proceedings against Owen [sic] had not run their full course when this second prosecution commenced at his Court's order, after Owens's successful appeal. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S. Ct. 732, 737, 154 L.Ed.2d 588 (2003); *Price*, 398 U.S. at 326, 90 S.Ct. at 1759; *State v. Kelly*, 992 A.2d 776, 784 (N.J. 2010); *Evans v. United States*, 987 A.2d 1138, 1141 (D.C. Ct. App. 2010); *Lemke v. Rayes*, 141 P.3d 407, 415 (Ariz. Ct. App. 2006); *Lambert v. State*, 1999 OK CR 17, ¶ 9, 984 P.2d 221, 227. Owens was prosecuted in this trial for the exact same felony murder charge he was convicted of in the first trial -- felony murder of Javier Carranza with the underlying felony being the robbery of the same victim.

8

Owens argues that the continuing jeopardy doctrine does not apply because he was acquitted of the felony which supports the felony murder charge, and cannot be tried again for the same offense. Owens is mistaken. The felony robbery charge of which Owens was acquitted was separate from the felony murder charge. Owens has confused these two separate charges. He is correct that, had he been convicted of both the felony murder and the underlying felony, the underlying felony conviction would be dismissed. *Browning v. State*, 2006 OK CR 8, ¶ 34, 134 P.3d 816, 838. In the same vein, had he been acquitted of felony murder, with robbery as the underlying felony, he could not then have been separately prosecuted for the robbery. *Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977). However, neither of these circumstances were present in this case. Owens was not charged, in this retrial, with robbing Javier. The elements of felony murder necessarily include the elements of the underlying felony offense which is alleged as the predicate felony. 21 O.S.2001, § 701.7(B); *Harris*, 433 U.S. at 682, 97 S.Ct. at 2912. Nevertheless, they are separate crimes. In alleging felony murder, the State is claiming that the victim died during the course of a robbery. To support this claim Owens need not be separately charged with or convicted of the robbery to prove the murder. The State must offer evidence showing that the victim was robbed and was killed in the course of that robbery. This issue was not necessarily decided in Owens's first trial by the jury's verdict acquitting Owens of Javier's robbery, but finding Owens guilty of Javier's murder.

Owens relies on United States Supreme Court cases which hold that double jeopardy or collateral estoppel bars retrial where a jury has necessarily, by acquittal, determined an issue of ultimate fact which would have to be proved in any subsequent trial. *Yeager v. United States*, __ U.S. __, 129 S.Ct. 2360, 2367, 174 L.Ed.2d 78 (2009); *Dowling v. United States*, 493 U.S. 342, 347-48, 110 S.Ct. 668, 671-72, 107 L.Ed.2d 708 (1990); *Ashe v. Swenson*, 397 U.S. 436, 446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Owens has the burden to show that the ultimate issue the State seeks to relitigate was decided in the first proceeding. *Dowling*, 493 U.S. at 350, 110 S.Ct. at 673. Owens relies on several cases from other jurisdictions to support his double jeopardy claim. None are [sic] persuasive under these facts. *Wright v. State*, 515 A.2d 1157, 1162 (Md. 1986) (where trial court found insufficient evidence of the underlying felony, felony murder charge in the same trial was barred); *State v. Lambert*, 624 S.E.2d 174 (Ga. Ct. App. 2005) (no double jeopardy bar to retrial on an underlying felony where defendant was acquitted of felony murder, but jury deadlocked on felony charge); *State v. McHenry*, 550 N.W.2d 364 (Neb. 1996) (on retrial, harmless error to instruct jurors on predicate crime for felony murder where defendant previously acquitted of underlying felony).

Owens argues that the jury's verdict acquitting him of Javier's robbery necessarily decided the ultimate fact of the underlying robbery claim supporting the felony murder charge. This argument fails to take into account the jury's entire verdict in Owens's first trial. At most, that verdict decided the ultimate issue two ways -- guilty and not guilty. **The key deciding factor in this case, which removes it from double jeopardy consideration, is the jury's verdict convicting Owens**

**of felony murder. Insofar as jurors in the first trial necessarily found any facts necessary to resolution of ultimate issues in this retrial, they were the facts underlying the jury's determination that Owens was guilty of felony murder.**

(Dkt. # 11, Ex. 3 at 3-6 (emphasis added)).

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: 'Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'" Monge v. California, 524 U.S. 721, 727–28 (1998) (quoting U.S. Const. amend. V). It protects a defendant against: (1) successive prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple criminal punishments for the same offense. See id. at 728 (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). "[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside . . . because of some error in the proceedings leading to conviction." Lockhart v. Nelson, 488 U.S. 33, 38 (1988). Put differently, "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." United States v. Scott, 437 U.S. 82, 90-91 (1978) (citation omitted). This is because a "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case," and "implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect . . . ." Burks v. United States, 437 U.S. 1, 15 (1978).

Petitioner has failed to demonstrate that the OCCA's adjudication of his double jeopardy claim "was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).  Petitioner's initial

felony murder conviction was reversed by the Oklahoma Court of Criminal Appeals because his

conviction on this charge resulted from "plain error," where "both the jury instructions and the trial

court's responses to jury questions on this very topic, indicates that Owens' jury very likely failed

to understand that it could only convict him of Count II if it could also conclude, and was willing

to find, that he was guilty of the armed robbery of Javier." See Dkt. # 11, Ex. 4 at 11.  This error is

comparable to other procedural errors that have been held not to bar reprosecution after reversal. In

Burks, for example, the United States Supreme Court identified "incorrect receipt or rejection of

evidence, incorrect instructions, or prosecutorial misconduct" as examples of legal errors that do not

bar retrial after a conviction is reversed. Burks, 437 U.S. at 15. In addition, "the Constitution permits

retrial after a conviction is reversed because of a defect in the charging instrument." Montana v.

Hall, 481 U.S. 400, 404 (1987). Courts have also permitted defendants to be retried after reversals

"for the introduction of a constructive amendment," United States v. Farr, 536 F.3d 1174, 1187 (10th

Cir. 2008), and because "the legal standard under which the jury was instructed and under which the

government presented its proof was incorrect," United States v. Wacker, 72 F.3d 1453, 1465 (10th

Cir.1995).

        In support of his habeas claim, Petitioner cites Harris v. Oklahoma, 433 U.S. 682 (1977). In

Harris, the Supreme Court held that "[w]hen, as here, conviction of a greater crime, murder, cannot

be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause

bars prosecution for the lesser crime, after conviction of the greater one." Id.  In this case, however,

Petitioner was not retried on the lesser crime for which he was acquitted.  Instead, he was retried on

the greater crime of felony murder for which he was convicted by the first jury because the first

11

jury's inconsistent verdicts were attributable to confusion, as reflected in the record. Thus, Petitioner's case is readily distinguishable from <u>Harris</u>. Petitioner has failed to demonstrate that the OCCA's adjudication of his double jeopardy claim was contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on his double jeopardy claim.

As part of his direct appeal, Petitioner also argued that his retrial and conviction on the charge of felony murder violated the principle of collateral estoppel. The OCCA rejected that claim, finding as follows:

> The fact that jurors returned inconsistent verdicts in Owens's first trial bears on Owens's argument that collateral estoppel prevents his retrial. Where jurors have returned inconsistent verdicts, collateral estoppel cannot apply, because a reviewing or subsequent court cannot determine why jurors acquitted a defendant of one or more charges. *United States v. Powell*, 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984); *Kelly*, 992 A.2d at 786. Given the jury's verdict in Owens's first trial, he cannot show that jurors actually determined he did not participate in the robbery which resulted in Javier's death. Continuing jeopardy attaches to this prosecution after the case was reversed and remanded for retrial. The felony murder offense at issue in this retrial was a separate and distinct offense from the robbery offense of which Owens was previously acquitted. Jurors convicted Owens of the same felony murder charge in his previous trial. **Because the jury's verdicts were inconsistent, the record does not show jurors necessarily decided any issue in Owens's previous trial which would preclude a conviction for felony murder on retrial.** Owens's conviction and sentence for felony murder do not violate the constitutional prohibitions against double jeopardy.

(Dkt. # 11, Ex. 3 at 6 (emphasis added)).

"Collateral estoppel, or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" <u>Schiro v. Farley</u>, 510 U.S. 222, 232 (1994) (quoting <u>Ashe</u>, 397 U.S. at 443). To be relevant to a double jeopardy argument such as that raised

by Petitioner, collateral estoppel requires that the defendant have actually had "an issue of ultimate fact" resolved in his favor in a prior proceeding. See id.

As discussed above, the first jury returned inconsistent verdicts and did not resolve an issue of ultimate fact in favor of Petitioner. Thus, collateral estoppel cannot apply to bar Petitioner's retrial. Powell, 469 U.S. 57, 68 (1984). The Court finds the OCCA reasonably applied the Supreme Court's holdings in Ashe, Schiro, and Powell to the facts of this case. As a result, Petitioner has failed to demonstrate that the OCCA's adjudication of the collateral estoppel component of his double jeopardy claim was "contrary to, or an unreasonable application of, federal as determined by the Supreme Court." 28 U.S.C. § 2254(d).  Therefore, Petitioner is not entitled to habeas corpus relief on his claim that collateral estoppel precluded his retrial on the charge of First Degree Felony Murder.

## 2. Admission of evidence supporting charge for which Petitioner was acquitted (ground 2)

As his second proposition of error, Petitioner claims that the State was improperly allowed to admit evidence supporting charges of which he had been acquitted, specifically, Shooting With Intent to Kill (Count III), and Robbery of Javier Carranza With a Dangerous Weapon (Count IV), in violation of collateral estoppel principles.  On direct appeal, the OCCA rejected this claim, finding as follows:

> We find in Proposition II that admission of evidence about the robbery of Javier Carranza and shooting of Jesus Carranza was not barred by collateral estoppel. Owens was acquitted in his first trial of robbing Javier and shooting Jesus with intent to kill. Owens objected to this evidence both before and during trial, and has preserved this issue for appeal. Owens's claim rests on the idea that the jury in the first trial determined, by its verdicts of acquittal of the robbery and shooting, facts necessary to resolution of the issues in the second trial. *Yeager*, __ U.S. __, 129 S.Ct. at 2367. We determined in Proposition I that Owens has not met his burden to show that the jury in this first trial necessarily decided the ultimate issue of whether Owens

13

and Sanders, acting together, robbed Javier and he died during the course of that robbery -- that is, the issue presented by the felony murder charge in this trial. Given the jury's inconsistent verdicts in the first trial, this Court cannot conclude that the previous jury's verdict, acquitting Owens of shooting Jesus with intent to kill, necessarily decided Owens did not participate in that crime, which was part of the *res gestae* surrounding the felony murder charge. The United States Supreme Court has declined to extend the collateral estoppel doctrine to exclude otherwise relevant and admissible evidence because it relates to conduct for which a defendant was previously acquitted, where the acquittal did not determine an ultimate issue in the present case. *Dowling*, 493 U.S. at 348, 110 S.Ct. at 672.

(Dkt. # 11, Ex. 3 at 6-7).

Petitioner is not entitled to habeas corpus relief on this claim unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). The Court finds the OCCA reasonably applied Dowling v. United States, 493 U.S. 342 (1990), to the facts of this case. Therefore, Petitioner is not entitled to habeas corpus relief on his claim that the trial court erroneously allowed admission of evidence related to crimes for which he was acquitted.

### 3.     Improper sentence on inconsistent verdicts (ground 3)

As his third proposition of error, Petitioner claims that, on November 19, 2007, after his first trial, he was wrongly sentenced and incarcerated in violation of the Eighth Amendment. See Dkt. # 1. His claim is premised on the argument that since he was found not guilty of Robbery With a Dangerous Weapon as to Javier Carranza, the trial court erred in sentencing him at the conclusion of the first trial for the crime of Felony Murder. Petitioner raised this claim as part of his first direct appeal, Case No. F-2007-1151. The OCCA denied relief on the claim, summarizing Petitioner's claim and finding as follows:

. . . Owens argues that he was wrongly sentenced to imprisonment for life on the Count II felony murder count, because this conviction was logically inconsistent with the jury's verdict in acquitting him on Count IV. This Court has already recognized

14

that a jury's verdict need not be logically consistent. Furthermore, this claim is rendered moot by this Court's reversal of Count II.

See Dkt. # 16, Ex. 4 at 11-12.

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." United States v. Meyers, 200 F.3d 715, 718 (10th Cir. 2000). "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." Aragon v. Shanks, 144 F.3d 690, 691 (10th Cir. 1998). To satisfy the case or controversy requirement, the petitioner "must have suffered or be threatened with an actual injury traceable to the respondents and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). A petitioner must "continue to have a personal stake in the outcome" of his case in order to satisfy the case or controversy requirement of Article III. Spencer, 523 U.S. at 7.

In this case, the relevant inquiry as to any ground related to Petitioner's sentence of life imprisonment entered at the conclusion of this first trial is whether Petitioner is subject to collateral consequences adequate to meet the injury-in-fact requirement of Article III. Spencer, 523 U.S. at 7. Clearly, Petitioner's challenge to his first sentence of life imprisonment is moot since the OCCA reversed and remanded for a new trial his Felony Murder conviction. The fact that Petitioner was subsequently convicted of Felony Murder at the conclusion of his second trial, and sentenced to life imprisonment, does not entitle Petitioner to relief since he was not retried on the charge of Robbery With a Dangerous Weapon for which he had been acquitted. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

4.       **Ineffective assistance of counsel (ground 4)**

As his fourth proposition of error, Petitioner claims that he received ineffective assistance of trial counsel. See Dkt. # 1.  Specifically, Petitioner claims that trial counsel provided ineffective assistance in failing "to adequately investigate and present additional evidence of innocence."  Id. He complains that in his second trial, his trial counsel failed to call Elizabeth Millican and Valerie M. Fuller as defense witnesses, and that those witnesses could have "provided evidence that someone else besides Owens and Sanders could have robbed and killed Javier Carranza." Id.  On direct appeal, the OCCA rejected this claim, finding as follows:

> He must show both that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We review counsel's performance against an objective standard of reasonableness under prevailing professional norms, and we will not second-guess strategic decisions. *Harris v. State*, 2007 OK CR 28, ¶ 29, 164 P.3d 1103, 1114-15; *Rompilla v. Beard*, 545 U.S. 374, 380-81, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005). If we find that Owens has not shown prejudice we need not reach the claim of deficient performance. *Williams v. Taylor*, 529 U.S. 362, 393, 120 S.Ct. 1495, 1513, 146 L.Ed.2d 389 (2000) (defendant prejudiced where counsel's actions deny him a substantive or procedural right to which he is entitled by law); *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.
>                                          * * * *
> Owens claims counsel failed to investigate and present additional evidence of his innocence. While Owens claims counsel failed to investigate the evidence, the record shows that counsel represented Owens at his first trial and was aware of this evidence. In connection with it he has filed an Application for Evidentiary Hearing. As shown in the discussion below, Owens fails to show by clear and convincing evidence a strong possibility that counsel was ineffective for failing to use this evidence. Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010). The record shows that counsel was aware of both Millican's testimony and the DNA test results, and chose not to use them. "[W]here counsel makes an informed decision to pursue a particular strategy to the exclusion of other strategies, this informed strategic choice is virtually unchallengeable." *Harris*, 2007 OK CR 28, ¶ 33, 164 P.3d 1103, 1116 (citation omitted). Owens fails to show he was prejudiced by counsel's strategic decisions.  Owens has not shown a reasonable probability that presentation of either Millican's testimony or the DNA evidence would have affected the results of the trial.

(Dkt. # 11, Ex. 3 at 11-12).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

In this case, Petitioner has failed to demonstrate entitlement to relief under § 2254(d). As to Petitioner's first claim of ineffective assistance of counsel, the Court has reviewed the testimony of Elizabeth Millican, a witness for the defense at Petitioner's first trial. Millican testified that she lived at the East Village Apartments at the time of this shooting. See Dkt. # 12-2, Tr. Trans. Vol. IV, dated October 18, 2007, at 748. During the early morning hours of May 20, 2006, she heard what she thought were firecrackers. Id. When she opened her door, she saw one black man shooting towards two Hispanic men. Id. 749-50. She did not see two black men, nor did she see any women. Id. at 753. Millican also testified that she had never seen Petitioner before. Id. at 758.

As his second claim of ineffective assistance, Petitioner complains that trial counsel failed to call Fuller as a witness for the defense. See Dkt. # 1. He claims that Fuller, a forensic chemist for the Tulsa Police Department, examined DNA from blood found on the inside pockets of pants worn by the deceased victim, Javier Carranza, and determined that the DNA was inconsistent with the DNA of the victim and both Petitioner and co-defendant Sanders. Id. at page 16 of 20. The OCCA denied Petitioner's Application for Evidentiary Hearing on this claim, filed as part of his direct appeal. See Dkt. # 11, Ex. 3 at 12. The OCCA also made a finding of fact that the record showed that counsel was aware of the DNA test results, and chose not to use them. Id.

Although trial counsel chose not to call either Millican or Fuller as a witness for the defense at Petitioner's second trial, and, in fact, called no witnesses for the defense at the second trial, trial counsel nonetheless presented Petitioner's defense through cross-examination of the State's witnesses. In light of the evidence against Petitioner, primarily, the clear and positive testimony of Lindsey, Fleetwood, and Jesus Carranza, the Court finds that trial counsel's performance was reasonably competent, and that whatever else he might have done, or done differently, does not serve to undermine confidence in the jury's verdict. Counsel's strategy was reasonable. Boyle v.

McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy."); Boyd v. Ward, 179 F.3d 904, 915 (10th Cir. 1999) (describing decisions regarding impeaching witnesses and introducing evidence as matters of "trial strategy and tactics"); see also Strickland, 466 U.S. at 699.

In summary, Petitioner has failed to demonstrate that the OCCA's rejection of his claim of ineffective assistance of trial counsel "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this claim.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

19

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  As to the claim denied as moot, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of a claim on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter.  A certificate of appealability is **denied**.  The Clerk shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 13-5039.

**DATED** this 30th day of April, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE